# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D23-2353
Lower Tribunal No. 2020-CA-8564-O

_____

AMAZULU TRANSPORT, INC. and PETER STUART WELCH, JR.,

Appellants,

v.

GARY DINKINS,

Appellee.

_____

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Orange County.
Margaret H. Schreiber, Judge.

March 14, 2025

BROWNLEE, J.

Appellant Peter Stuart Welch, Jr., appeals a nonfinal order granting Appellee Gary Dinkins's motion for leave to amend the complaint to add a claim for punitive damages. Because we agree with Welch that the proffered evidence fell short of providing a reasonable basis for the recovery of punitive damages, we reverse. Although we reject Welch's remaining arguments, we take this opportunity to explain our disagreement with three of our sister courts on the issue of whether a trial judge is

required to make affirmative findings when permitting a plaintiff to plead punitive damages. We now hold there is no such requirement.

**1. The Relevant Facts**

Welch and Dinkins were involved in a two-car collision that occurred at approximately 11:00 a.m. one morning. After the accident, Dinkins sued Welch for negligence and included a vicarious liability claim against Welch's employer, Amazulu Transport, Inc. As the parties proceeded through discovery, Dinkins deposed Welch and learned that he was a regular user of marijuana:

Q. Had you taken any illicit drugs within 12 hours of the accident?

A. I don't recall.

Q. At the time of the accident, were you a regular user of marijuana?

. . . .

A. Can you define regular?

Q. Well, why don't you answer it as you understand the word regular?

A. Yes.

Q. How frequently were you using marijuana around the time of the accident?

A. Daily.

Q. Did you have a habit of using it in the morning or afternoon or evening or would you use it throughout the day? What was your frequency?

A. Throughout the day.

Q. Would you use marijuana on days that you were working?

2

A.    Yes.

Q.    Were you using marijuana on the day that this accident happened?

A.    I don't recall.

Q.    Would it have been your normal routine to have used marijuana within 12 hours of the accident?

A.    No.

Q.    You said you used it regularly throughout the day. . . . When you used marijuana in January of 2017, how would you use marijuana? Would you smoke it or was it edible?  How did - -

A.    Smoke.

Q.    Smoke it?  And when you smoked it, would you smoke it in the morning when you first woke up?

A.    No.

Q.    When would you normally smoke marijuana in January of 2017?

A.    Later in the day, just more of an afternoon, evening.

Q.    Do you remember using marijuana after this accident?

A.    No.

After the deposition, Dinkins moved to amend his complaint to add a claim for punitive damages against Welch.  According to Dinkins, Welch "testified that he was a regular user of marijuana who would smoke [marijuana] throughout the day, including days he was working" and such conduct was sufficiently outrageous to justify punitive damages.  In support of his motion, Dinkins proffered a portion of the deposition testimony cited above and then filed the entire deposition transcript with the court.  No

3

other evidence was proffered. Welch responded, in part, that Dinkins was not entitled to punitive damages because there was no evidence that Welch was impaired at the time of the accident.

At the end of the hearing on Dinkins's motion for leave to amend, the trial court found:

> I have a proffer that's been made that indicates this gentleman was a regular user of marijuana, used it daily around the time of the accident, had a frequency of use throughout the day, and used it on the day he worked. The requirement of the proffer has been met. I'm going to find there is a sufficient basis for the assertion of the punitive damages claim.

The trial court later entered an unelaborated, written order granting Dinkins's motion. Welch now challenges that ruling.

## 2. The Sufficiency of the Proffer

On appeal, Welch argues the trial court erred in determining Dinkins established a basis in the record to support a claim for punitive damages. He focuses on the proffer and argues, "[t]here was no evidence presented that [Welch] had used marijuana in the morning prior to the accident, or that he was high or impaired at the time of the accident." We review the trial court's order de novo,[1] and we agree with Welch.

"In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which

---

[1] A trial court's order allowing the amendment of a pleading to add a claim for punitive damages is reviewed de novo. *See Mercer v. Saddle Creek Transp., Inc.*, 389 So. 3d 774, 776 (Fla. 6th DCA 2024).

4

would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2023). The trial court acts as a gatekeeper and may allow a party to assert a punitive damages claim only if there exists a reasonable evidentiary basis for the recovery. *See Mercer*, 389 So. 3d at 777–78. Florida courts have held that intoxication while driving may constitute a basis for a punitive damages award. *See Gattorno v. Souto*, 390 So. 3d 134, 138 (Fla. 3d DCA 2024) ("[W]e hold that juries may award punitive damages where voluntary intoxication is involved in an automotive accident in Florida." (quoting *Ingram v. Pettit*, 340 So. 2d 922, 924 (Fla. 1976))).

Dinkins relies on *Ingram* and section 316.193, Florida Statutes, to defend his entitlement to bring a punitive damages claim. He hangs his hat on Welch's deposition testimony and asserts, "driving in such an intoxicated condition creates a known risk to the public and punitive damages are a suitable corollary to those criminal laws designed to discourage such reckless disregard for public safety." While we agree with Dinkins's recitation of the law, he overlooks that *Ingram* and section 316.193 both require a showing of intoxication or impairment that is absent here.

In *Ingram*, the Florida Supreme Court held that "the voluntary act of driving 'while intoxicated' evinces, without more, a sufficiently reckless attitude for a jury to be asked to provide an award of punitive damages if it determines liability exists for compensatory damages." 340 So. 2d at 924. The court then expounded upon the term intoxicated and explained it is identical to the "degree of intoxication required in Section

860.01, Florida Statutes (1975), pertaining to automobile manslaughter." *Id.* According to the court, "intoxication means that the defendant must have been *so affected from the drinking of intoxicating liquor as to have lost or been deprived of the normal control of either his body or his mental faculties, or both*. Intoxication is synonymous with 'drunk.'" *Id.* at n.10 (quoting Fla. Std. Jury Instr. (Crim.) Manslaughter--DWI, 84 (1975)) (emphasis added).

Cases decided after *Ingram* consistently permit a plaintiff to plead punitive damages when there is evidence of defendant's intoxication. *See, e.g.*, *Gattorno*, 390 So. 3d at 136–38 (finding proffered evidence satisfied the statutory requirement to provide a reasonable basis for recovery of punitive damages where proffer included testimony that appellant drank a substantial amount of alcohol in a 45-minute period and appeared intoxicated); *Matalon v. Lee*, 847 So. 2d 1077, 1079 (Fla. 4th DCA 2003) ("A jury may award punitive damages where voluntary intoxication is involved in an automobile accident.").

Section 316.193—the current version of the DUI manslaughter statute—also requires some showing of impaired faculties: "[a] person is guilty of the offense of driving under the influence and is subject to punishment . . . if the person is driving or in actual physical control of a vehicle within this state and . . . [t]he person is under the influence of . . . any substance controlled under chapter 893,[2] *when affected to the extent*

---

[2] The parties do not dispute that marijuana is such a substance.

*that the person's normal faculties are impaired.*"  § 316.193(1)(a), Fla. Stat. (2023) (emphasis added).[3]  "'Impaired' means diminished in some material respect."  Fla. Std. Jury Instr. (Crim.) 7.8 (citing *Shaw v. State*, 783 So. 2d 1097 (Fla. 5th DCA 2001)).

Despite the clear references to intoxication and impairment in the authorities on which Dinkins relies, he proffered no evidence that Welch's normal faculties were impaired or that he was intoxicated at the time of the accident.  There was no evidence that he exhibited any such signs at all.  Although Dinkins's motion referenced incriminating blood test results, no results were ever proffered or otherwise included in the record.  In fact, Welch never even testified that he used marijuana on the morning of the accident.

On this record, Dinkins has not made a showing that would provide a reasonable basis for the recovery of punitive damages.  Consequently, we reverse the trial court's order granting Dinkins's motion for leave to amend the complaint.

### 3. The Alleged Requirement to Make Affirmative Findings

As his second basis for reversal, Welch argues the trial court's order granting the motion for leave to amend the complaint "failed to make an affirmative finding that

---

[3] This language is consistent with section 768.736, Florida Statutes, which establishes exceptions for punitive damages claims involving intoxication: "Sections 768.725 and 768.73 do not apply to any defendant who, at the time of the act or omission for which punitive damages are sought, was under the influence of any alcoholic beverage or drug *to the extent that the defendant's normal faculties were impaired*, or who had a blood or breath alcohol level of 0.08 percent or higher." (emphasis added).

[Dinkins] made a reasonable showing in the record which would provide a reasonable evidentiary basis for recovering punitive damages." We disagree that the trial court had any obligation to make such a finding.

Welch takes issue with both the trial court's oral pronouncement at the end of the hearing on the motion for leave to amend and its written order. As for the oral pronouncement, Welch argues the trial court "failed to make an affirmative finding of what the punitive conduct was, and how it causally related to liability in this case." He then argues the written order is likewise insufficient because it states only that the motion is "'granted' without further comment about the evidence, or how it supported the claim of gross negligence and willful [in]difference."

In making these arguments, Welch relies on case law from Florida's Third, Fourth, and Fifth Districts, holding, for example, that "the trial court, serving as a gatekeeper, is required to make an affirmative finding that plaintiff has made a 'reasonable showing by evidence,' which would provide a 'reasonable evidentiary basis for recovering such damages' if the motion to amend is granted." *Varnedore v. Copeland*, 210 So. 3d 741, 748 (Fla. 5th DCA 2017) (citations omitted); *see also Petri Positive Pest Control, Inc. v. CCM Condo. Ass'n*, 174 So. 3d 1122, 1122 (Fla. 4th DCA 2015) ("[W]e read section 768.72 as creating a positive legal right in a party not to be subjected to financial worth discovery until the trial court has first made an *affirmative finding* that there is a reasonable evidentiary basis for the punitive damages claim to go

8

to the jury." (citation omitted)); *Cat Cay Yacht Club, Inc. v. Diaz*, 264 So. 3d 1071, 1075 (Fla. 3d DCA 2019).[4]

While we respect the thoughtful opinions of our sister courts, we are not bound by their holdings. *See CED Cap. Holdings 2000 EB, LLC v. CTCW-Berkshire Club, LLC*, 363 So. 3d 192, 195 (Fla. 6th DCA 2023) ("[T]he Sixth District Court of Appeal is not bound by the precedent of any of its sister courts, including the Second and Fifth District."). Rather than looking to the case law of other districts to determine whether a trial court must make affirmative findings when permitting a plaintiff to add a punitive damages claim, we search the applicable statute and rule.

We begin with the statute. Section 768.72(1), Florida Statutes, governs claims for punitive damages and provides:

(1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure.

Florida Rule of Civil Procedure 1.190(f) allows the amendment of a pleading to add a claim for punitive damages when a plaintiff makes "a reasonable showing, by evidence in the record or evidence to be proffered by the claimant, that provides a reasonable basis for recovery of such damages."

---

[4] We question whether these cases require the nuanced findings that Welch asserts are necessary.

9

As evidenced by the quoted language, the requirement that a trial court make affirmative findings when granting a motion for leave to amend a complaint to add a punitive damages claim is born of case law, not the language of section 768.72 or rule 1.190(f). Indeed, neither the statute nor the rule contains any such requirement, and it is not our place to supply this perceived omission. *See* Antonin Scalia & Bryan A. Garner*, Reading Law: The Interpretation of Legal Texts* 94 (Thomson/West, 1st ed. 2012) ("The absent provision cannot be supplied by the courts. . . . 'To supply omissions transcends the judicial function.'" (quoting *Iselin v. United States*, 270 U.S 245, 251 (1926))).

Moreover, as Florida courts frequently note, when the legislature wishes to obligate the trial court to make affirmative findings, it knows how to do so. *See, e.g., John Knox Vill. of Cent. Fla., Inc. v. Est. of Lawrence by and through Castleman*, 379 So. 3d 1205, 1208 (Fla. 5th DCA 2024). In fact, the legislature does it all the time. *See, e.g.*, § 948.06(8)(e)1., Fla. Stat. (2024) ("If the court, after conducting the hearing required by paragraph (d), determines that a violent felony offender of special concern has committed a violation of probation or community control other than a failure to pay costs, fines, or restitution, the court shall: Make written findings as to whether or not the violent felony offender of special concern poses a danger to the community."); § 61.075(3), Fla. Stat. (2024) ("In any contested dissolution action wherein a stipulation and agreement has not been entered and filed, any distribution of marital assets or

marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1). The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following . . . ."). And, sometimes, this requirement is mandated by the rules of procedure. *See, e.g.*, Fla. R. Civ. P. 1.510(a) ("The court shall state on the record the reasons for granting or denying the [summary judgment] motion."). But we search in vain for a similar requirement in the text of either section 768.72 or rule 1.190(f).

Nor do we believe the Florida Supreme Court's opinion in *Globe Newspaper Co. v. King*, 658 So. 2d 518 (Fla. 1995), demands affirmative findings. Unlike this case, *Globe Newspaper* arrived at the appellate court on certiorari review, and ultimately, the Florida Supreme Court was tasked with deciding whether a party can properly challenge orders granting leave to amend to add a punitive damages claim using a petition for writ of certiorari. The court held that they could. In doing so, it explained: "We read section 768.72 to create a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a *determination* that there is a reasonable evidentiary basis for recovery of punitive damages." *Id.* at 519 (emphasis added). But requiring a *determination* is not the same as requiring an *affirmative finding*. And the trial court here necessarily made the *determination* that

11

there was a reasonable evidentiary basis for the recovery of punitive damages when she granted the motion. Nothing further was required.

As a result, we decline to follow the holdings of the Third, Fourth, and Fifth Districts and certify conflict with *Cat Cay Yacht Club, Inc. v. Diaz*, 264 So. 3d 1071, 1075 (Fla. 3d DCA 2019), *Petri Positive Pest Control, Inc. v. CCM Condominium Ass'n*, 174 So. 3d 1122 (Fla. 4th DCA 2015), and *Varnedore v. Copeland*, 210 So. 3d 741, 748 (Fla. 5th DCA 2017). In doing so, we align ourselves with the First District's opinion in *Watt v. Lo*, 302 So. 3d 1021, 1024–25 (Fla. 1st DCA 2020) ("[N]othing in the plain language of section 768.72(1) requires a trial court to make express or affirmative findings when determining whether to permit a claimant to assert a punitive damages claim. All that is required is that the claimant make the necessary showing based on evidence in the record or proffered by the claimant.").

REVERSED; CONFLICT CERTIFIED.

NARDELLA, J., concurs.
WHITE, J., concurs in part and concurs in result, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF TIMELY FILED

_____

WHITE, J., concurring in part and concurring in result.

I join section 3 of the majority opinion in full. As to sections 1 and 2, while I agree that the trial court erred in permitting Dinkins to assert a punitive damages claim, I do so for somewhat different reasons.

I agree with the majority that the proffered evidence is insufficient to show intoxication under *Ingram* or impairment under section 316.193. Dinkins also relies on *Huber v. State*, 669 So. 2d 1079 (Fla. 4th DCA 1996). The majority does not address that case so I will.

In *Huber*, there was testimony that the defendant had been "drinking very heavily" on the day of the offense and was "intoxicated" at the time of the offense. 669 So. 2d at 1083. Because the record contained "evidence about *the amount of alcohol consumed*, as well as evidence that the defendant was *intoxicated*," the court concluded that the trial court erred by denying the request for a voluntary intoxication defense jury instruction. *Id.* (emphasis added). *Huber* does not help Dinkins because his proffer contains neither evidence of the amount of marijuana Welch used nor evidence that Welch was intoxicated.

We must view the proffered evidence in the light most favorable to Dinkins and must not weigh the proffered evidence or make assessments of credibility. *See Mercer v. Saddle Creek Transp., Inc.*, 389 So. 3d 774, 776-77 (Fla. 6th DCA 2024); *see also Cook v. Fla. Peninsula Ins. Co.*, 371 So. 3d 958, 961-64 (Fla. 5th DCA 2023); *Werner*

13

*Enters. v. Mendez*, 362 So. 3d 278, 281-84 (Fla. 5th DCA 2023). Nevertheless, the majority declares that "Welch never even testified that he used marijuana on the morning of the accident."

Although "[a] reasonable jury might well view the [evidence] that way . . . it is not for us to definitively forecast which view a jury will take, but only to determine if there is a reasonable view of the evidence that supports the plaintiff's position." *Werner Enters.*, 362 So. 3d at 283; *see also Cook*, 371 So. 3d. at 963-64 (concluding that, because "there were reasonable inferences and sufficient circumstances submitted" which must be viewed "in the light most favorable" to the plaintiff, the trial court erred by making "a factual determination at the pleading stage."); *cf. Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1258 (11th Cir. 2015) ("While there is *contrary equivocal evidence* that the final draft of the advertisement used may not have been approved by Defendant, under the summary judgment standard, the question of on whose behalf the fax advertisement was sent is a question to be decided by a jury." (emphasis added)).

Applying those standards, the jury could reasonably conclude that Welch admitted to habitually using marijuana in the morning every day, including workdays. Thus, the proffered evidence supports a finding that Welch used marijuana that morning prior to the accident. A jury could make such finding by accepting Welch's inculpatory

testimony, rejecting his exculpatory testimony, and drawing reasonable inferences; an unequivocal admission is not required.

The proffered evidence fails, however, to make a reasonable showing of the amount that Welch used. Dinkins cites no authority stating that proffered evidence of use of an unknown amount of marijuana, standing alone, makes the reasonable showing of intoxication or impairment required to support a punitive damages claim.

For all the foregoing reasons, the proffered evidence is simply too feeble to make a reasonable showing that would provide a reasonable basis for the recovery of punitive damages. Therefore, I concur in the judgment to reverse the trial court's order granting the motion.

_____

Michael A. Sastre, of Sastre Saavedra & Epstein, PLLC, Miami, for Appellant, Peter Stuart Welch, Jr.

No Appearance for Appellant, Amazulu Transport, Inc.

Nicholas A. Shannin, Carol B. Shannin, and Dayna Maeder, of Shannin Law Firm, P.A., Orlando, for Appellee.

15